McBRIDE, Judge.
Plaintiff, District Attorney of the Parish of Jefferson, acting for and on behalf of said parish, instituted this injunction and abatement proceeding under R.S. 13:4711 et seq., seeking to suppress a nuisance at, and to padlock the premises 129 Sala Avenue, Town of Westwego, Louisiana, which premises are owned by the defendant, Jacob F. Gassenberger, who operates therein an establishment which is euphemistically denominated “Robin’s Lounge.”
Plaintiff proceeds under R.S. 13:4711 which provides:
“Any building, structure, land, watercraft or movable, in or upon which *412 or any part of which, assignation, prostitution or obscenity as now defined or as may hereafter be defined by the Criminal Laws of this State, is carried on, conducted, continued or permitted or exists, and the furniture, fixtures, equipment and musical instruments, television receivers, phonograph or voice recording devices therein and other contents thereof are declared to be nuisances and shall be enjoined and abated as provided in R.S. 13:4711 through R.S. 13:4717. The owner of any building, structure, land, watercraft, or movable, and the officers of any corporation which is the owner, and the agent, representative and employee of any owner, and the lessee, sublessee or other occupants of any building, structure, land, watercraft or movable in or upon which, or any part of which, assignation, prostitution, or obscenity as now defined or as may hereafter be defined by the criminal laws of this state, is carried on, conducted, continued or permitted, or exists, shall be guilty of maintaining a nuisance, and shall be enjoined as provided in R.S. 13:4711 through R.S. 13:-4717. * * * ”
R.S. 13:4714 authorizes the closing of such premises, which, unless released under bond as provided in R.S. 13:4715, shall remain padlocked for a period of one year.
The petition alleges that the property and the building situated thereon is a place in and upon which assignation, prostitution or obscenity is practiced, which condition has existed for an indefinite period of time; the petition sets forth that:
“(a) On October 27, 1964 Bella A. Blanchard W/F 19, was arrested from the premises described above on a charge of Prostitution.
“(b) Geraldine Green W/F 22, was arrested from the premises described above on October 27, 1964 on a charge of prostitution.
“(c) On October 27, 1964 Mary F. Young W/F 19, was arrested from the premises described above on a charge of Prostitution.”
It is averred that the building and property has the general reputation of being a place used for the solicitation of prostitution and for prostitution.
After a trial on the merits, there was judgment declaring the premises in question a nuisance, which defendant Gassen-berger was found guilty of maintaining within the purview of the pertinent statutes; it was decreed that the premises be effectively closed for use of any kind for one year and that the defendant, his agents and employees be enjoined from removing therefrom any property for a period of one year and that defendant be enjoined from maintaining, carrying on or permitting the practice of prostitution therein. Defendant appealed.
By means of an exception of no cause of action, the defendant pleaded the unconstitutionality of R.S. 13:4712; the plea was overruled below, and appellant now raises it on this appeal.
In support of the plea, counsel for appellant argue in brief:
“The act in question, R.S. 13:4712 which gives the District Attorney the right to bring an action of abatement, nowhere sets forth any criterion or rules or standards under which the District Attorney will proceed. The act uses the word ‘MAY’ and in the humble opinion of the author of this memorandum ‘MAY’ can only mean within the sufferance, discretion and whim of the said District Attorney — in other words, whenever he wants to, when it suffices his pleasure or personal feeling, he may bring an action of abatement — could be he does not like one operator — could be a political campaign is coming up — could be a lot of things. This must lead not only to *413 an unconstitutional delegation of authority, but also to an unconstitutional, unequal protection of the laws. Would this Court care to imagine how many prostitution cases have been made in the Parish of Jefferson these last few years — but lo and behold, there have been only four or five padlock cases made by the District Attorney. Was there ever a clearer case of discretion and abuse of the legislative grant of authority.”
Cited on behalf of appellant are several authorities from the United States Supreme Court and from courts of this state said to hold that it is an unconstitutional delegation of legislative authority whenever a statute authorizes an individual or board to grant, suspend or revoke licenses to conduct a business pursuit without setting forth or prescribing rules or standards with respect to the regulation of the business. The cited cases are wholly inapposite.
The trial court correctly overruled the exception. R.S. 13:4712 is not an unconstitutional delegation of authority nor does it deprive anyone of the equal protection of the law; what the enactment does is to authorize the district attorney, for and on behalf of his parish, whenever in his opinion such action is warranted, to bring suits to abate nuisances as defined by R.S. 13:4711, as amended. There is no mandatory duty imposed upon the district attorney to bring such actions. It is to be noted R.S. 13:4712 also specifically provides that any corporation or association formed in this state for the suppression of vice, and any citizen of the parish may likewise maintain the action. Although a district attorney is a constitutional officer, the constitution does not enumerate his powers and duties. His authority to institute and prosecute criminal proceedings against persons chárged with crime, although not expressly provided for in the constitution, is clearly and necessarily implied therefrom. Kemp v. Stanley, 204 La. 110, 15 So.2d 1. Under our statutory law, the district attorney has the entire charge and control of every criminal prosecution instituted or pending in any parish wherein he is district attorney, and shall determine whom, when, and how he shall prosecute. R.S. 15:17; State v. Collins, 242 La. 704. 138 So.2d 546; State v. Jourdain, 225 La. 1030, 74 So.2d 203.
The legislature in enacting R.S. 13:4712 endowed a district attorney with authority to bring a civil action to abate the nuisances defined by R.S. 13:4711, as amended. See Hubert v. Claiborne Realty Company, La.App., 78 So.2d 249 (certiorari refused with the per curiam “We find no error of law in the judgment of the Court of Appeal.”). In a civil action such as this, a district attorney certainly has no lesser latitude of discretion to determine when he shall bring the action to abate and to control the proceedings than in any criminal case. We do not agree with the contention of defendant’s counsel that it was necessary that the legislature set forth “any criterion or rules or standards under which the District Attorney will proceed.”
R.S. 13:4717 provides that evidence of the general reputation of the building, . structure, land or other place or of the deféndant or of the occupants shall be admissible, and judgment may be based on the general reputation so proven.
During the latter part of 1964, defendant’s establishment was under investigation by the Sheriff of the Parish of Jefferson. Tassin, a lifelong resident of Westwego, an alderman of the town since 1961 and presently its mayor-elect, testified that he is familiar with the general reputation of Robbin’s Lounge. He stated that, as a public official, he derived the knowledge from civic groups and others that Robin’s Lounge had the reputation of being used for the solicitation of prostitution. On cross-examination the witness could not name any particular persons with whom he discussed the reputation of the establishment, but we are satisfied that the witness, as an official of the Town of Westwego, *414 knew such was the reputation of the place in question.
Hebert, of the parish Sheriff’s vice squad, testified he investigated Robin’s Lounge in December, 1964, and that the establishment had the reputation of being a place where girls work as prostitutes. He stated his knowledge of such reputation was gained from information received five or six years previously.
There is testimony emanating from members of the Sheriff’s force showing the specific activities of certain women in Robin’s Lounge. The Mary Young and Geraldine Green hereinafter mentioned are employed therein as barmaids.
Reese, a Sheriff’s deputy investigating the establishment, entered Robin’s Lounge in October, 1964. A woman named Bella Blanchard solicited him for prostitution and agreed to commit the act with him for a $20 fee, he to pay $5 for rental of the room used. Reese and the woman left Robin’s and entered an automobile parked outside. The Blanchard woman sat behind the wheel and drove the car to a motel some distance away. Upon reaching the motel, the woman instructed Reese to pay $5 to the clerk for the room to which they were assigned. He states he and the woman entered the room where she disrobed and asked for her $20, which he also paid. He partly undressed, and when the woman was upon the bed, he arrested her. Reese summoned Deputy Lefevre to the motel to assist in the arrest, and while awaiting Le-fevre’s arrival, he saw Geraldine Green and a man entering the motel office. Reese stated he had seen Geraldine Green in Robin’s Lounge on numerous occasions.
Pore, a deputy sheriff, saw Reese and Bella Blanchard sitting together in Robin’s and then observed their exit via the side door. Pore explained his presence in Robin’s by stating he was a member of the vice squad and was participating in the investigation.
Hebert, already mentioned, stated that in December, 1964, he went into Robin’s Lounge and had a drink after which the defendant came over to him, and he asked defendant if “that proposition we had talked about was still good” and that Gas-senberger answered “yes”, whereupon Gas-senberger beckoned to a woman named Mary Young to come over to where Hebert was seated. The same modus operan-di was employed as in the case of Reese and Bella Blanchard. The woman agreed to commit prostitution for a stated price plus room rent; the parties left the place, and she drove her car and he followed in his to the same motel where she was arrested under the same circumstances as was Bella Blanchard.
The evidence shows that Bella Blanchard and Mary Young had been paid with marked money, and Thompson, of the Sheriff’s vice squad, testified some of the money was later found in a cigar box behind the bar at Robin’s Lounge. Thompson had assisted in the arrest of Mary Young at the motel. He also stated that Robin’s Lounge is reputed to be a house of prostitution. He arrested Gassenberger for keeping a disorderly place.
It is strenuously argued by appellant that it was not shown that assignation or prostitution took place in or upon defendant’s premises. While the word “assignation” has a well-defined dictionary meaning, we do not find that the word has been defined by the criminal laws of this state. “Prostitution” according to R.S. 14:82 is "the practice by a female of indiscriminate sexual intercourse with males for compensation.”
It is true there is no evidence that acts of sexual intercourse actually took place in defendant’s place. If there were a criminal proceeding, it may be that the activities of the women as aforementioned in the establishment would not constitute the offense of prostitution as defined by our criminal laws. But for the purposes of this abatement suit, purely a civil matter, we think the general reputation of the place, which has been shown, coupled with *415 the actions of the female inmates thereof, would he sufficient to warrant the court in entertaining the belief that Robin’s Lounge is being used for the purposes of prostitution within the purview of R.S. 13:4711, as amended.
The late Court of Appeal for the Parish of Orleans had an analogous case in Hubert v. Claiborne Realty Company, supra. The court maintained an abatement suit wherein the evidence showed solicitation for prostitution but not the consummation of the sexual act. The court said:
“In his contention that the mere offering by a woman to indulge in sexual intercourse for pay constitutes prostitution, the district attorney directs our attention to the decision of our Supreme Court in State v. Thibodeaux, 136 La. 935, 67 So. 973, 974, in which it is stated that prostitution ‘ “is the practice of a female offering her body to an indiscriminate intercourse with men” ’. We have no doubt that, with the knowledge and consent of Josephine Cobb, Elizabeth Largent was ‘ “offering her body to an indiscriminate intercourse with men” ’. However, when our Supreme Court, in the Thibodeaux case, quoted with approval from the definition of the word ‘prostitution’ in which it was said that prostitution is the ‘offering’ of the body to an indiscriminate intercourse, we think that the Court did not actually intend to point to a distinction between offering to indulge in sexual intercourse and the actual indulgence therein, as it seems that what was involved was not the difference between the offer and the consummation, but was rather whether sexual intercourse between one man and one woman, however frequently indulged in, constituted prostitution.
iji í{í 4 ^ sjs
“Surely, it could not be successfully contended in such cases that there was no proof of prostitution merely because there may have been no evidence by eyewitnesses of the actual performance of the act. In fact, in the Thibodeaux, case the Court used other language in defining the word ‘prostitution,’ which' we think rather clearly indicates that the Court felt that prostitution is indulged in where a woman offers herself for sale, even though actual intercourse may not result. The Court said:
“ ‘ “In its most general sense, prostitution is the setting one’s self to sale * *
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.